**Electronically Filed
Intermediate Court of Appeals
29495
30-NOV-2011
08:58 AM**

NO. 29495

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI


JOHN S. ATHENS, Claimant-Appellee, v.
INTERNATIONAL ARCHAEOLOGICAL RESEARCH INSTITUTE, INC.,
Employer-Appellant, and FIRST INSURANCE
COMPANY OF HAWAII, LTD., Insurance Carrier-Appellee


LABOR AND INDUSTRIAL RELATIONS APPEALS BOARD
(CASE NO. AB 2006-086
(2-05-45770)

SUMMARY DISPOSITION ORDER
(By:  Foley, Presiding Judge, Fujise and Leonard, JJ.)

Employer-Appellant International Archaeological
Research Institute (**Employer**) appeals from the Hawaiʻi Labor and
Industrial Relations Appeals Board's (**LIRAB**) August 26, 2008
"Decision And Order" (**Decision And Order**).

Employer raises the following points of error:

(1)  LIRAB erred in overruling Employer's objections to
Dr. Eron's PowerPoint presentation, and in denying Employer's
related oral and written motions to strike;

(2)  LIRAB clearly erred in entering Findings of Fact
(FOFs) 21 and 22, which state, in part:

> 21.  Based on the foregoing, the Board finds that the only
> issue before the Board on this appeal is whether Claimant's
> [idiopathic CD4 lymphocytopenia (**ICL**)] was a compensable
> consequence or result of the January 5, 2005 work injury.
> The Board finds that the issue of whether Claimant's ICL was
> aggravated by the compensable January 5, 2005 injuiry is not
> subsumed in the issue of compensable consequence as
> identified in the January 31, 2007 pre-trial order.

22. Even if Claimant and Employer were allowed to proceed on the alternative argument that Claimant's cryptococcal meningitis aggravated his preexisting ICL, the opinions of Dr. Berman and Dr. Eron established by substantial evidence that Claimant's cryptococcal meningitis did not aggravate an underlying ICL condition or disease.
. . . .

3. LIRAB erred in concluding that Claimant's ICL was neither a compensable consequence of the January 5, 2005 cryptococcal meningitis, nor was the ICL caused by the cryptococcal meningitis; and

4. LIRAB erred in denying reconsideration of the Decision and Order.

Upon careful review of the record and the briefs submitted by the parties and having given due consideration to the arguments advanced and the issues raised, we resolve Employer's contentions as follows:

(1) Hawaii Administrative Rules (**HAR**) § 12-47-41 (2007) provides that:

The [LIRAB] shall not be bound by statutory and common law rules relating to the admission or rejection of evidence. The [LIRAB] may exercise its own discretion in these matters, limited only by considerations of relevancy, materiality, and repetition, by the rules of privilege recognized by law, and with a view to securing a just, speedy, and inexpensive determination of the proceedings.

Thus, the LIRAB has "wide discretion in managing evidence[,]" and the LIRAB's evidentiary rulings should be upheld, absent a showing of an abuse of discretion. Sugano v. Dept. of Atty. Gen., No. 29246, 2010 WL 231100, at *3 (Haw. App. Jan. 22, 2010). We cannot conclude that the LIRAB's allowance of Dr. Eron's PowerPoint slides as a demonstrative aide was an abuse of discretion. Employer also argues that the slides included an additional theory, not contained in Dr. Eron's original reports, thus constituting an unfair and prejudicial surprise. However, it appears that the subject portion of Dr. Eron's presentation was based on information contained in Claimant's medical and laboratory reports, that it was consistent

with Dr. Eron's other testimony, and that the LIRAB did not clearly exceed the bounds of reason or disregard rules or principles of law or practice to Employer's substantial detriment in allowing the presentation.

(2) Employer contends that the theory that the Claimant's ICL was aggravated by his infection should have been considered by the LIRAB under the issue of compensable consequence. It appears, however, that Claimant's claim was that the cryptococcal meningitis was the underlying cause of the ICL, not that it aggravated a pre-existing condition. In fact, Claimant specifically denied that he was claiming an aggravation of a pre-existing condition. In addition, the authority relied on by Employer, Diaz v. Oahu Sugar Co., 77 Hawai'i 152, 883 P.2d 73 (1994), is inapposite. We cannot conclude that the LIRAB erred when it found that the issue of whether the Claimant's ICL was aggravated by the compensable injury was not subsumed in the issue of compensable consequence.

(3) There was substantial evidence to support the LIRAB's conclusion that Claimant's ICL was not a compensable consequence of his compensable cryptococcal meningitis. The testimony of Dr Eron, Dr. Day, and Dr. Berman, *inter alia*, directly supported the conclusion that the ICL was not work-related, pre-existed the cryptococcal meningitis infection, and was not caused by the cryptococcal meningitis infection. Although not presented in terms of absolute certitude, the testimony supporting the LIRAB's conclusion presents "a high quantum of evidence which, at the minimum, [is] relevant and credible evidence of a quality and quantity sufficient to justify a conclusion by a reasonable person that an injury or death is not work connected." Nakamura v. State, 98 Hawai'i 263, 267-68, 47 P.3d 730, 734-35 (2002) (citation, internal quotation marks, and brackets omitted).

3

(4)  The LIRAB did not abuse its discretion in denying the Employer's September 25, 2008 motion for reconsideration, based on new evidence not available at the time of the original hearing.  The Employer argues that after the date of the LIRAB hearing, the Claimant's medication for the cryptococcal meningitis was stopped, which resulted in an increase in his CD4 count from 149 on March 14, 2006 to 173 on May 16, 2008.[1/] Thereafter, however, his CD4 count again dropped to 151 on August 29, 2008. Claimant's attending physician stated that it could not be confirmed that the Claimant's treatment contributed to his lymphocytopenia.  Although the temporary increase in the Claimant's CD4 count following the discontinuance of the treatment could not have been presented at the LIRAB hearing, we cannot conclude that the LIRAB abused its discretion by declining to reconsider its prior decision based on a temporary increase in Claimant's CD4 level to a level that was still well below the normal range.  The subsequent decrease, together with the lack of testimony affirmatively supporting Employer's theory that this new evidence was highly probative regarding a causal connection between the cryptococcal meningitis, and/or the treatment of the cryptococcal meningitis, and Claimant's ICL, lead us to reject Employer's argument that the LIRAB abused its discretion when it denied the motion for reconsideration.

---

[1/]   A normal CD4 level appears to be approximately between 410 and 1560, depending on the assay. For the sake of comparison, testimony was presented that a patient with AIDS would have a CD4 count of less than 200.

For these reasons, the LIRAB's August 26, 2008 Decision and Order is affirmed.

DATED:   Honolulu, Hawaiʻi, November 30, 2011.

On the briefs:

Scott G. Leong
Shawn L.M. Benton
(Leong Kunihiro Lezy & Benton)
for Employer-Appellant

John S. Athens
Claimant-Appellee *Pro Se*

Carlton W.T. Chun
Leilani A. DeCourcy
(Chun & DeCourcy, LLC)
for Insurance Carrier-Appellee

Presiding Judge

Associate Judge

Associate Judge